NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-92

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 375532

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On November 22, 2021, a Middlesex County Superior Court judge entered a judgment affirming the final decision of the Sex Offender Registry Board ("SORB") to classify the plaintiff as a level three sex offender. The plaintiff now appeals, arguing that his classification is improper because the SORB hearing examiner breached the appearance of impartiality, misapplied statutory risk factors, ignored relevant expert testimony, and rendered a classification decision unsupported by clear and convincing evidence.

Although most of his contentions are without merit, we conclude that, because the hearing examiner did not explain or even make explicit her apparent conclusion that the defendant, convicted only of a noncontact offense, was likely to reoffend by committing a contact offense against a prepubescent child,

her conclusion that he poses a high degree of dangerousness was not supported by clear and convincing evidence. We therefore vacate the judgment and remand for further proceedings.

Background. 1. The plaintiff's history of sexually inappropriate behavior. The plaintiff committed his index offenses, four counts of possession of child pornography, in 2011, when he was nineteen years old. The hearing examiner found that, in addition to those noncontact offenses, the had plaintiff raped a fourteen year old girl in 2005, when he was thirteen years old, and that he last committed a contact offense in 2007, when he touched the buttock of a high school classmate, at age fifteen.

a. 2005 incident. On January 2, 2008, a sixteen year old girl reported to the Needham police department that in 2005, when she was fourteen years old, the plaintiff, who was then thirteen years old, assaulted her on three separate occasions. The first instance occurred in October 2005. While the two were sitting together in a small room near the plaintiff's grandmother's kitchen, the plaintiff began rubbing the girl's upper inner left thigh. The girl told him to stop, and he did, but he then asked her to watch "porn" with him on his computer. The girl refused, and she promptly left. After some time, through an instant messaging service, the plaintiff apologized and told the girl that it would never happen again. The girl

2

later returned to the grandmother's home to watch television with the plaintiff who, despite her resistance, pulled her pants down and penetrated her vagina with his fingers and a stuffed animal. After this, the plaintiff again apologized, and the girl believed that he was sorry. She later brought the plaintiff into her home, believing it to be safe. However, when the two were alone in the basement, the plaintiff pushed the girl down onto a couch and again digitally penetrated her vagina.

The plaintiff was arraigned on February 14, 2008, in Dedham Juvenile Court, on one count of juvenile delinquency, to wit rape of a child. He was placed on pretrial probation for one year, ordered to stay away from the girl, and ordered to undergo a sex offender evaluation and recommended treatment. After the completion of the treatment program, his probation was terminated, and the charge was dismissed.

The hearing examiner concluded that, despite the dismissal, the girl's rape allegations were detailed, credible, reliable, and supported by the plaintiff's documented apologies, in which he admitted that he touched the girl without her consent.

b. 2006 incident. The plaintiff disclosed to his psychologist that in September 2006, when he was in ninth grade and aged fourteen, he had emailed his eighth-grade teacher to ask if her chest "had gotten bigger." He believed that he had a

good student-teacher relationship with her that had the potential to "be more." The hearing examiner concluded, based on the plaintiff's admissions, that the plaintiff had engaged in this sexually inappropriate behavior.

c. 2007 incidents. The plaintiff admitted to his psychologist that on February 17, 2007, when he was aged fifteen, he had touched the buttocks of a fifteen year old female classmate during photography class at their high school. He thought that she might "approv[e]" of his actions. The girl quickly became upset, told him that it was "really degrading," and went to the vice-principal's office in tears.

On May 24, 2007, the plaintiff was arraigned in Dedham Juvenile Court on one count of juvenile delinquency, to wit indecent assault and battery on a person aged fourteen or older, but that charge was dismissed three months later.

The hearing examiner found the allegations to be credible, a conclusion the examiner found to be further supported by the plaintiff's own admissions.

The examiner noted that while the indecent assault and battery charge was pending, the plaintiff allegedly engaged in additional sexually inappropriate behavior. He admitted to his psychologist that in August 2007, when he was aged fifteen, he had exposed himself to his stepfather's secretary in the belief that she would "respond in a positive way."

4

2.  Index offenses.  The plaintiff's governing offenses occurred four years later, when he was nineteen years old.  On January 16, 2011, a "Geek Squad" employee at Best Buy, who worked as a technician repairing computers, contacted Needham police and reported that a laptop that had been dropped off for servicing at the Best Buy in Framingham, Massachusetts, contained suspicious files depicting inappropriate behavior by young children.

The police subsequently determined that the laptop belonged to the plaintiff and contained twelve videos and approximately sixty-two still images of children engaged in sexual activity.

The plaintiff was charged with four counts of possession of child pornography, and on June 7, 2012, he pleaded guilty to all counts.  He was sentenced to twenty-five months in a house of correction, with twenty months to serve and the balance suspended for five years, and concurrent five-year terms of probation.  The plaintiff violated the terms of his probation one year later and was incarcerated from May 2013 until December 2014.

3.  Proceedings below.  On or about August 30, 2012, the plaintiff was classified as a level three sex offender.  He challenged the classification and requested an administrative review.  A classification hearing was held on September 28,

2016, and on March 7, 2017, a final decision was issued classifying the plaintiff as a level three sex offender.

The plaintiff appealed the decision, and on March 5, 2018, a Superior Court judge remanded the case to SORB on the basis that the hearing examiner wrongly denied the plaintiff's request for expert funds and failed to account for the plaintiff's age with respect to the two sexual assaults committed by the plaintiff when he was fourteen and fifteen years old.

Another classification hearing took place on October 30, 2018. On March 21, 2019, the plaintiff was again classified as a level three sex offender. The plaintiff appealed. While the appeal was pending, the Supreme Judicial Court (SJC) decided Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643 (2019) (Doe No. 496501), and the plaintiff's case was remanded for explicit findings consistent with that decision.

On November 19, 2020, the hearing examiner issued a final decision classifying the plaintiff as a level three sex offender. The plaintiff appealed, a Superior Court judge affirmed, and that appeal is now before this panel.

Discussion. 1. SORB's decision. a. Standard of review. "A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates

6

constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  See Doe No. 496501, 482 Mass. at 649, citing G. L. c. 30A, § 14 (7).

b.  Clear and convincing evidence.  To impose a level three classification, a hearing examiner must make explicit findings that there is "a high risk of reoffense, a high degree of dangerousness, and a public safety interest is served by active dissemination of the offender's registry information."  Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022) (Doe No. 6729), citing Doe No. 496501, 482 Mass. at 656-657.

To determine an individual's degree of dangerousness, the hearing examiner must "consider what type of sexual crime the offender would likely commit if he or she were to reoffend."  Doe No. 496501, 482 Mass. at 651.  This determination is made "based on the sexual crime or crimes that the offender committed in the past."  Id.  While a hearing examiner "may consider an offender's older sexual offenses where they are relevant to a holistic assessment of the offender's current degree of dangerousness," where an individual has "a history of different sexual offenses, the primary focus would likely be on the crime or crimes recently committed by the offender."  Id.

Here, the hearing examiner made no explicit finding about what type of sexual crime the plaintiff would likely commit if

7

he were to reoffend.  As the plaintiff observes, the hearing examiner's discussion of dangerousness did not even mention the plaintiff's noncontact child pornography convictions -- his most recent crimes and index offenses -- a single time.  The SJC has explained that "an individual is generally unlikely to pose [even] a moderate degree of dangerousness -- and thus . . . qualify as a level two sex offender -- where his or her risk of reoffense relates only to noncontact offenses that do not put a victim in fear of bodily harm by reason of a contact sex offense."  Doe No. 496501, 482 Mass. at 659-660.

The hearing examiner may have believed the plaintiff poses a risk of reoffending by committing a contact offense with a prepubescent or other child and thus presents a high degree of dangerousness.[1]  See Doe No. 496501, 482 Mass. at 659 ("contact offenders are generally more dangerous than noncontact offenders").  But the hearing examiner's decision does not lay out clear and convincing evidence that that is the case.  The plaintiff has never committed a contact offense with a prepubescent child.  And his only contact offenses were when he himself was a child and they were with children his own age or older.  The hearing examiner has not explained whether and why

---

[1] The plaintiff's older sister wrote in a letter, submitted as evidence to the hearing examiner, that she had allowed the plaintiff to babysit her four month old son.

8

these contact offenses are predictive of further contact offenses with children now that the plaintiff is an adult. His noncontact offenses, possession of child pornography, some of which involved young children, inherently involves what the plaintiff admitted to, finding these images "sexually appealing." And it may be that his possession of child pornography combined with his juvenile contact offenses is predictive of future contact offenses with children. But, again, the hearing examiner has not explained whether or why his offenses are predictive of such behavior.

We express no opinion on these questions, or on the question of what offenses someone with the complex sexual offense history of the plaintiff would likely commit if he were to reoffend. We have none of the expertise on the matter that the hearing examiner and the experts at SORB have. But a high risk of dangerousness must be found by clear and convincing evidence before an individual can be classified as a level three sex offender, and because clear and convincing evidence is not demonstrated on the face of the hearing examiner's decision, we must vacate it and remand the case for further proceedings, including a new hearing should the hearing examiner conclude that is necessary, in order for her to make a proper determination of the plaintiff's classification.

9

2. Other matters. Although our disposition obviates the need for discussion of some of the plaintiff's claims, some may be relevant on remand and so we address them.

a. Recusal. The plaintiff argues that the hearing examiner should have recused herself due to an appearance of partiality. The plaintiff's argument stems from the hearing examiner's conduct at the classification hearing on October 30, 2018. There, counsel for SORB arrived late and empty-handed. He asked the hearing examiner to provide him with her copy of SORB's evidence, a collection of documents provided to all parties prior to the hearing. The hearing examiner did so. Counsel for SORB proceeded to spread the documents out, directly in front of counsel for the plaintiff, who was sitting across from him in "very close proximity." The plaintiff's counsel did not ask any questions about the documents or object to the examiner's actions during the hearing, but filed a motion to recuse, one week later, on November 6, 2018.

The examiner declined to recuse herself. In a written decision, she said that SORB counsel came to the hearing and asked that she provide him with her copy of the materials that had been provided to all parties prior to the hearing. She said she handed her copy of "SORB Exhibits 1-5" to SORB counsel. This was done, she said, "directly in front of Counsel for the [plaintiff]" and "[i]t was clear what the documents were and

10

Counsel for the [plaintiff] was provided copies prior to the hearing." There were no questions or objections from the plaintiff's counsel when SORB counsel requested the documents or when the exhibits were entered into evidence. The examiner also stated that she had never discussed the case with SORB counsel and that there was no prior arrangement made for the exchange of documents.

The plaintiff argues before us that recusal was required because the examiner's actions created an appearance of partiality. He notes that the hearing examiner stated that she handed over only "SORB exhibits 1-5" but that SORB's counsel later stated on the record that he was reading from the 2018 Superior Court remand decision -- a document not contained within "SORB exhibits 1-5."

"The strict ethical constraints to which judges are subject not only require a judge to examine his or her own conscience for disqualifying bias, and to act accordingly, but also obligate the judge to recuse himself or herself from any matter in which 'the judge's impartiality might reasonably be questioned.'" Adoption of Iliana, 96 Mass. App. Ct. 397, 407 (2019), quoting S.J.C. Rule 3:09, Code of Judicial Conduct, Canon 2, Rule 2.11 (A) (1) (2016). This standard also applies to hearing examiners. See Doe, Sex Offender Registry Bd. No. 29481 v. Sex Offender Registry Bd., 84 Mass. App. Ct. 537, 541

11

(2013) (Doe No. 29481). "[H]earing officers, like judges, are held to 'high standards [which] are reflective of the constitutional rights of litigants to a fair hearing.'" Id., quoting Police Comm'r of Boston v. Municipal Court of W. Roxbury Dist., 368 Mass. 501, 507 (1975). Individuals like the plaintiff, that are subject to an "adjudicative determination that [they] must register as a sex offender," are "entitled to an administrative proceeding where there is no significant doubt whether the impartiality of the hearing examiner has been compromised." Doe No. 29481, supra at 542. As in the case of the recusal of judges, "actual impartiality alone is not enough." Id. at 541, quoting Commonwealth v. Morgan RV Resorts, LLC, 84 Mass. App. Ct. 1, 9 (2013). "In order to preserve and protect the integrity of the judiciary and the judicial process, and the necessary public confidence in both, even the appearance of partiality must be avoided." Doe No. 29481, supra at 541-541, quoting Morgan RV Resorts, LLC, supra.

We review the hearing examiner's decision not to recuse for abuse of discretion. See Commonwealth v. Rivera, 473 Mass. 1003, 1005 (2015). We conclude that the examiner did not abuse her discretion. As to the first prong of the recusal inquiry, we are not in a position to question the examiner's finding that, after examining her own conscience, she could be fair and impartial.

12

The second prong, involving the appearance of partiality, is more difficult.  Obviously, SORB counsel should have been prepared for the hearing and should have brought with him whatever documents he intended to rely upon or otherwise needed in order to participate fully in the hearing.  The hearing examiner also should not have provided documents to one party -- just as a judge should not -- at least without explaining on the record what the documents were, explaining why she believed her provision of them to that party did not prejudice the other side, and ensuring that there was no objection to this procedure.

In this case, however, the documents handed to SORB counsel were "clearly visible to Counsel for the [plaintiff]."  In determining whether the examiner's impartiality might "reasonably be questioned," it is particularly relevant that, at the time of the hearing, the plaintiff's counsel did not question the exchange of documents.  The examiner's conclusion is reasonable that it was "clear what the documents were."  The plaintiff's counsel had a clear view of the documents and, prior to hearing, was provided with copies of the same documents.

The plaintiff correctly notes that the 2018 Superior Court decision, from which SORB counsel directly read, is not contained within "SORB exhibits 1-5."  Rather, it was recorded in the record as "Exhibit J," under the subheading "Documentary

13

Evidence."  Although there is no suggestion that the plaintiff's counsel did not have a copy of that exhibit, the plaintiff suggests that one possible interpretation of the examiner's mistaken recollection is that the examiner was covering up her improper conduct.  The plaintiff argues that seeing the examiner hand the opposing attorney a stack of documents, from the point of view of an individual in the plaintiff's position, would have created "suspicio[n]" that something improper was afoot.

But the plaintiff's theory, again, runs headfirst into his failure to object.  The plaintiff's quiescence at the time, coupled with his failure to identify what one might reasonably suspect the examiner provided the SORB attorney, undermines the picture of partiality he paints now.  And, significantly, nothing he says is inconsistent with the examiner's statements that the documents were "clearly visible," that it was "clear what the documents were," and that the documents consisted of "material provided to all parties prior to the hearing."  We conclude, therefore, that the plaintiff has not met his burden to show that the examiner's decision not to recuse was an abuse of discretion.

b.  <u>Misapplication of statutory risk factors</u>.  The plaintiff also argues that the hearing examiner misapplied statutory risk factors.

14

The first alleged misapplication involves high-risk factor two, "Repetitive and Compulsive Behavior". See 803 Code Mass. Regs. § 1.33 (2) (2016). The examiner concluded that "[b]ased on [plaintiff's] sexual behavior with detections, sanctions, and charges prior to his new offenses, this high risk factor applies with the most weight." The plaintiff argues that application of factor two was improper because the examiner failed to specifically find that plaintiff's behavior was "compulsive." However, a finding that an individually sexually reoffended following an individual's involvement with the criminal justice system due to prior sexual offenses, is "sufficient to satisfy the separate requirement of proving that his conduct was compulsive as well as repetitive." Doe No. 6729, 490 Mass. at 765. This is because "while there is no predictive value for the risk of reoffending based solely on the commission of multiple sex offenses, there is such value '[i]f a person offends, gets caught[,] and then goes on to reoffend again,' particularly when 'the criminal justice system . . . doesn't inhibit them.'" Id. at 766. That predictive value is implicated here, where the hearing examiner found that the plaintiff reoffended following previous "detections, sanctions, and charges." This finding was sufficient to satisfy the separate requirement of proving that the plaintiff's conduct was compulsive and supported the application of factor two.

15

The plaintiff next argues that the hearing examiner erred because she failed explicitly to ascribe particular weights to nine separate risk factors. The plaintiff insists that the examiner had a "duty" to assign weights. But this argument was recently rejected by the SJC in Doe No. 6729, 490 Mass. at 767 (no error where "the hearing examiner applied certain risk factors without denoting whether she ascribed a threshold, moderate, or high degree of weight to each factor").

c. Failure to consider expert witness testimony. The plaintiff also argues that the hearing examiner failed properly to consider the testimony of an expert witness who testified on his behalf. Specifically, the plaintiff called Dr. Laurie Guidry, a psychologist, who evaluated the plaintiff and concluded that he presented with only an "average" risk to recidivate with a sexual offense. As the plaintiff acknowledges, he "is not entitled to a guarantee that SORB will reach the same conclusion as his expert; he is entitled only to careful consideration of his expert's testimony." Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 137 (2019). Where the hearing examiner departs from conclusions drawn by an expert witness, she must explain on the record her reasons for rejecting the expert's testimony. See id. at 136. The hearing examiner in this case did so. In her five-page discussion of Dr. Guidry's testimony, the examiner

16

explained that she disagreed with the expert's risk opinion because the expert had based much of her report on what the plaintiff had told her, "yet [the plaintiff] has been an incredibly inconsistent reporter during more than the past decade including statements about his offending and substance abuse." The examiner listed a number of inconsistencies in the plaintiff's reporting, including how the plaintiff initially reported that he was not under the influence of any drugs during his use of child pornography, but later told Dr. Guidry in 2018 that he was under the influence "most of the time." The examiner highlighted the plaintiff's claim, at age fifteen, that he had "not yet used 'street drugs,' and tried alcohol and was drunk 'once,'" which was followed by an admission at age twenty that he "first smoked marijuana at age [thirteen], and first drank alcohol at age [fourteen], with his use then escalating." The plaintiff's inconsistent reporting as described by the hearing examiner formed a sufficient foundation for the examiner's departure from the expert's conclusions. There was thus no error.

d. The plaintiff's age. Finally, the plaintiff argues that the examiner erred by failing to consider his age at the time of his juvenile offenses. See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 113 (2014) (Doe No. 68549) ("it would not have been proper . . . to

17

disregard the fact that Doe was a youth when he offended").  In Doe No. 68549, the SJC concluded that the examiner had taken "into consideration Doe's young age at the time of his offenses," where the examiner applied risk factors "in the manner that the guidelines deem[ed] appropriate for juvenile offenders" and made references "to the fact that Doe was an 'adolescent' and a 'juvenile' at the time of his offenses."  Id. at 113-114.  Here, although it appears the examiner considered the plaintiff's age in the manner required by Doe No. 68549, there is some ambiguity in her language.  This can best be addressed by the hearing examiner considering his age in that manner in her decision after remand.

3.  Conclusion.  We vacate the judgment affirming SORB's decision classifying the plaintiff as a level three sex offender.  A new judgment shall enter vacating SORB's decision

and remanding this matter to SORB for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Green, C.J.,
  Rubin & Massing, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  July 14, 2023.

---

[2] The panelists are listed in order of seniority.